**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| X TECHNOLOGIES, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-10-CV-319-XR |
| | § | |
| MARVIN TEST SYSTEMS, INC., | § | |
| | § | |
| *Defendant*. | § | |

**ORDER**

On this date, the Court considered Defendant's Motion to Dismiss (Docket Entry No. 3) in light of Plaintiff's Amended Complaint and Response in Opposition to the Motion, as well as Defendant's Reply to Plaintiff's response.  The motion is DENIED.

**Background**

Plaintiff X Technologies ("X Technologies"), an engineering and technology provider, contracted with Defendant Marvin Test Systems, Inc. ("MTS") to work together in creating bids for X Technologies to submit to a Solicitation by the United States Air Force ("USAF") for the upgrade and reconfiguration of a laser-guided bomb tester at Hill Air Force Base, Utah.  The USAF issued its Solicitation on August 12, 2009, for the project at issue.

X Technologies contacted MTS, and the companies entered into a Non-Disclosure Agreement effective on August 13, 2009, prohibiting each other from using or disclosing confidential information exchanged during the course of their collaboration.  In September 2009, the parties entered into a "Teaming Arrangement," whereby they agreed to jointly pursue the USAF Solicitation in which X-Technologies would serve as the Prime Contractor and MTS would serve as a major subcontractor.  As part of the Teaming Arrangement, MTS provided a proposal on

September 30, 2009, in response to a September 29, 2010, e-mail from X Technologies in which Plaintiff's president asked for a price quotation of six items.

The proposal was entitled "Proposal for TS-217 Test Set and Associated Items in support of Hill AFB RFP # FA8224-09-R-0104, Submitted to X Technologies, Inc., San Antonio, TX."  It reads: "This proposal is submitted and accepted as part of a teaming arrangement between Geotest [MTS] and X-Tech to jointly pursue Hill RFP # FA8224-09-R-0104 . . . ."  The proposal provided "prices and delivery schedule for the TS-217 mainframe and associated items, software licenses, software source code, and training."  Paragraph 6 of the proposal incorporates MTS's standard Sales Terms and Conditions ("T&C"), which can be found online at http://www.geotestinc.com/Disclaimers.aspx? Page=Sales.  Paragraph 18 of the T&C states that venue for any dispute arising in connection with the T&C and/or the customer's purchase order shall be in Orange County, California.

Initially, the USAF Solicitation was limited to bids by small businesses, during which time X Technologies submitted a bid and was rejected.  The Solicitation was then amended to eliminate the limitation to small businesses, and X Technologies submitted a second bid, which was subsequently rejected on March 1, 2010.  At this time, the USAF also informed X Technologies that the contract had in fact been awarded to MTS.  X Technologies claims that MTS used the confidential information provided by X Technologies to bid for the Solicitation in violation of their agreement and that MTS would have been unable to present a successful bid without the technological information belonging to X Technologies.

X Technologies alleges that MTS made false representations as to material facts and also concealed material facts to induce X Technologies to divulge confidential information, and thus sues

2

MTS for fraud.  X Technologies also alleges that MTS was its agent for the purposes of creating bids

or that the parties were joint-venture partners, and MTS owed X Technologies a fiduciary duty,

which X Technologies claims MTS breached.  Finally, X Technologies sues MTS for breach of the

Teaming Agreement, the bid proposal, and the NDA.

### Procedural History

Plaintiff filed this suit against Defendant in state court in Bexar County, Texas, on April 22,

2010, alleging fraud, breach of fiduciary duty, and breach of contract.  Defendant timely removed

the case to this Court on the basis of diversity of citizenship.[1]  Defendant then filed a motion to

dismiss for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, or in

the alternative, to transfer venue to the Central District of California, Southern Division, pursuant

to 28 U.S.C. § 1404(a).[2]  Plaintiff then timely amended its complaint as a matter of course pursuant

to Rule 15(a)(1)(B)[3] and responded to Defendant's motion.[4]  On May 28, 2010, Defendant replied

to Plaintiff's response.[5]

---

[1] Def.'s Notice of Removal, April 23, 2010 (Docket Entry No. 1).

[2] Def.'s Mot. to Dismiss for Improper Venue, or, in the Alternative, to Transfer Venue, April 28, 2010 (Docket Entry No. 3).

[3] Pl.'s 1st Am. Compl., May 14, 2010 (Docket Entry No. 10).

[4] Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss for Improper Venue, or, in the Alternative, to Transfer Venue, May 21, 2010 (Docket Entry No. 11).

[5] Def.'s Reply to Pl.'s Resp. To Def.'s Mot. to Dismiss for Improper Venue, or in the Alternative, to Transfer Venue, May 28, 2010 (Docket Entry No. 13).

**Defendant's Motion to Dismiss for Improper Venue**

**A. Parties' Arguments**

Defendant moves to dismiss for improper venue on the ground that the agreement between the parties contained a forum selection clause, stipulating that Orange County, California, is the mandatory venue for any dispute arising from their agreement.[6]  MTS points to Paragraph 6 of the bid proposal developed by MTS for X Technologies, which X Technologies accepted, in support of its motion.[7]  Defendant asserts that the "shall be in" language of the forum selection clause makes venue in Orange County exclusive and mandatory.[8]

X Technologies opposes the motion by asserting that the condition precedent to the application of the T&C, namely, the placement of a purchase order, never occurred.[9]  X Technologies points to the statement at the beginning of the T&C that reads that "[p]lacing a purchase order . . . constitutes acceptance of these T&C."[10]  X Technologies contends that although it accepted the bid proposal submitted by MTS, X Technonlogies never placed a purchase order with MTS, and thus never activated the T&C.[11]  Plaintiff further asserts that even if the T&C are applicable, the asserted claims against Defendant do not fall within the scope of the forum selection clause in Paragraph 18

---

[6] Def.'s Mot. at 1.

[7] *Id.* at 4.

[8] *Id.* (citing *Alliance Health Group, LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399–401 (5th Cir. 2008)).

[9] Pl.'s Resp. at 6.

[10] *Id.*

[11] *Id.*

of the T&C.[12]  Paragraph 18 refers only to disputes "arising in connection with these T&C and/or the Customer's purchase order."[13]

## B. Legal Standard

On a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), the movant bears the burden of demonstrating that venue is defective.[14]  Undisputed facts in the plaintiff's pleadings will be accepted as true and any conflicts in the evidence will be resolved in the plaintiff's favor.[15]

The Supreme Court has held that forum selection clauses are presumptively valid and will be enforced unless the opposing party can show that enforcement would be unreasonable.[16]  Once the clause has been deemed valid, a court must then determine whether the case at hand falls within its scope.  In doing so, a court applies general rules of contract interpretation.[17]

## C. Analysis

X Technologies asserts that venue is proper in the Western District of Texas because a

---

[12] *Id.* at 7.

[13] *Id.* at 8.

[14] *Tex. Marine & Brokerage, Inc. v. Euton*, 120 F. Supp. 2d 611 (E.D. Tex. 2000) (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966)).

[15] *See Ginter ex. rel. Ballard v. Belcher, Predergast & Laporte,* 536 F.3d 439, 448–49 (5th Cir. 2008).

[16] *M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

[17] *Your Town Yellow Pages, L.L.C. v. Liberty Press, L.L.C.*, No. 3:09-CV-0605-D, 2009 WL 3645094 at *3 (N.D. Tex. Nov. 2, 2009).

substantial part of the events or omissions giving rise to the claim occurred in San Antonio.[18]  MTS does not contest this assertion.  Rather, Defendant claims that the forum selection clause in the bid proposal renders Plaintiff's choice of forum defective.

Plaintiff argues that the forum selection clause never went into effect because the T&C were predicated on the occurrence of an event—the placing of a purchase order—that never occurred.[19] Paragraph 6 of the bid proposal that forms the basis of the contract reads, "X-Technologies, Inc. agrees to the following terms and conditions covering this proposal which include the following: Geotest [MTS] standard Sales Terms and Conditions of sale as available on Geotest's [MTS's] Internet Website . . . ."[20]  The T&C as published on the Website are prefaced by a statement saying that placement of a purchase order constitutes an acceptance of the T&C.

In interpreting a contract, a court must strive to give "a reasonable, lawful, and effective meaning to all the terms of an agreement."[21]  An interpretation that gives such a meaning to a term is preferred over an interpretation that gives a term no meaning at all.  Thus, the Court declines to adopt the interpretation of Paragraph 6 and the T&C that Plaintiff presents.  To read the T&C as becoming effective only upon placement of a purchase order renders the inclusion of Paragraph 6 in the bid proposal redundant.  Rather, the Court finds that the T&C became effective when Plaintiff accepted the bid proposal.  The language regarding acceptance by purchase at the beginning of the

---

[18] Pl.'s Am. Compl. at 3.

[19] Pl.'s Resp. at 6.

[20] Def.'s Mot. Ex. A-1 at 13.

[21] *Harvey v. Joyce*, 199 F.3d 790, 794 (5th Cir. 2000) (citing RESTATEMENT (SECOND) OF CONTRACTS § 203 (1981)).

T&C does not indicate that acceptance is exclusive to that method, and the Court holds that Plaintiff accepted the T&C by accepting the bid proposal with the inclusion of Paragraph 6 and not by placing a purchase order.

Plaintiff further asserts that even if the T&C are effective, its claims against Defendant fall outside the scope of the T&C's forum selection clause.[22]  Paragraph 18 of the T&C, which contains the forum selection clause, says that its mandatory choice of law and venue provisions shall apply to "[a]ny dispute arising in connection with these T&C and/or the Customer's purchase order . . . ."[23]  Defendant, in its reply, asserts that Plaintiff was bound by the T&C by accepting the bid proposal with its mention of the T&C in Paragraphs 1.1 and 6.[24]  Defendant does not argue why the scope of the forum selection clause found in Paragraph 18 of the T&C ought to extend to the current dispute.

The Court agrees with Defendant that the word "shall" in the clause renders it exclusive and mandatory.  However, the Court also agrees with Plaintiff that the scope of the clause does not cover Plaintiff's claims of fraud, breach of fiduciary duty, and breach of contract.  The T&C cover terms such as taxes, payments, delivery, warranties, and returns related to the transfer of a product from MTS to X Technologies.  Plaintiff's claims of fraud, breach of fiduciary duty, and breach of contract cannot be said to have arisen "in connection" with such a transfer.  "If the substance of the plaintiff's claims . . . does not fall within the scope of the forum selection clause, the clause cannot apply."[25]

---

[22] Pl.'s Resp. at 7–10.

[23] Def.'s Mot. at 5.

[24] Def.'s Reply at 5.

[25] *TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*, 652 F. Supp. 2d 750, 759 (N.D. Tex. 2009).

The Court's reading of the contract shows that the parties plainly contemplated a purchase given the specifications, price quotations, and delivery schedule delineated in Paragraphs 3, 4, and 5 of the bid proposal. The content of the T&C is applicable to such a purchase. It is not, however, applicable to the NDA, the overall Teaming Agreement, or the parts of the bid proposal that do not contemplate a purchase, or at the least, the transfer of an item developed or owned by MTS to X Technologies in pursuit of the bid. Thus, the Court holds that although the forum selection clause is both valid and in effect, its scope does not cover the Plaintiff's claims, so it does not apply to this case. Accordingly, the Defendant's motion to dismiss for improper venue based on the forum selection clause is denied.

MTS also moves to dismiss for improper venue pursuant to 28 U.S.C. § 1406.[26] However, the Supreme Court has indicated that dismissal under that section is problematic in that it can result in injustice,[27] and a growing number of federal courts reject dismissal in favor of transfer when transfer is available.[28] Thus, the Court moves on to the analysis of Defendant's motion to transfer venue.

## Defendant's Motion to Transfer Venue to the Central District of California

### A. Legal Standard

Section 1404(a) of Title 28 provides that "[f]or the convenience of parties and witnesses, in

---

[26] Def.'s Mot. at 5. The statute reads: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406.

[27] *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465–466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962).

[28] 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1352 (3d ed. 2010).

the interest of justice, a district court may transfer any civil action to another district or division where it might have been brought."[29]  Transfer under § 1404(a) is limited to transferee districts in which the action might originally have been brought.[30]  After determining that the suit could have been filed in the transferee venue, a transferor district court must weigh the parties' private interests in convenience and the public interest in the fair administration of justice.[31]

The party moving to transfer must persuade the Court that transfer would signify more than shifting inconvenience from one party to another.[32]  Specifically, the moving party must "clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'"[33]  "Thus when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."[34]  The Court considers a number of factors in determining whether transferring venue serves the convenience of the parties and witnesses as well as the interests of justice.  The "private interest factors" include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a

---

[29] 28 U.S.C. § 1404(a).

[30] *Id.*; *see also In re Volkswagen of Am.* ("*Volkswagen II*"), 545 F.3d 304, 312 (5th Cir. 2008).

[31] *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

[32] *Van Dusen v. Barrack*, 376 U.S. 612, 646, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

[33] *Volkswagen II*, 545 F.3d at 314 (citing 28 U.S.C. § 1404(a)).

[34] *Id.*

case easy, expeditious, and inexpensive.[35]  The Court also should consider "public interest factors"

such as: (1) the administrative difficulties caused by court congestion; (2) the local interest in

adjudicating local disputes; (3) the familiarity of the forum with the law that will govern the case; and

(4) the avoidance of unnecessary problems in conflict of laws.[36]  Additionally, though it is not a

distinct factor, the Court must consider the plaintiff's choice of forum as part of the § 1404(a) motion

to transfer analysis.[37]

## B. Analysis

## (1) Whether the Case "Might Have Been Brought" in the Transferee District

A district court is one where the action "might have been brought" if it satisfies  the statutory

venue requirements set out in 28 U.S.C. § 1391.[38]  Section 1391(b) makes venue in a diversity case

appropriate in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the
> claim occurred, or a substantial part of property that is the subject of the action is situated, or
> (3) a judicial district in which any defendant may be found, if there is no district in which the
> action may otherwise be brought.[39]

Plaintiff asserts that the Western District of Texas is the appropriate venue pursuant to 28 U.S.C.

1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in

---

[35] *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft,* 454 U.S. 235, 241 n.6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

[36] *Id.*

[37] *Volkswagen II*, 545 F.3d at 314 n.10.

[38] *Hoffman v. Blaski*, 363 U.S. 335, 354, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

[39] 28 U.S.C. § 1391.

San Antonio.[40]   Defendant does not dispute this contention, but asserts that venue would be appropriate in the Central District of California.[41]  Defendant's primary place of business is in Orange County, California, in the Central District of California.[42]   According to 28 U.S.C. § 1391(c), a corporate defendant resides in any judicial district where it is subject to personal jurisdiction, and a corporation is subject to personal jurisdiction at its principal place of business.   Therefore, X Technolgoies could have brought this suit in the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) since MTS is located in the Central District of California.

**(2) Private Interest Factors**

*(a) Relative ease of access to sources of proof*

Plaintiff claims that "much" of the relevant information and documentation for this case is located at its offices in San Antonio.  Defendant asserts nothing in the way of sources of proof, though Plaintiff gives Defendant the benefit of the doubt in assuming that Defendant probably also has relevant documentation at its offices in California.  Since no evidence has been offered to demonstrate that the access to sources of proof would be easier in either California or Texas, the Court finds that this factor is neutral.

*(b) Availability of compulsory process to secure the attendance of witnesses*

This private interest factor applies to unwilling witnesses.  MTS contends that its crucial witnesses, *i.e.*, USAF employees based in Utah, will voluntarily provide testimony, though it does

---

[40] Pl.'s Am. Compl. at 3.

[41] Def.'s Mot. at 7.

[42] *Id.* at 2.

not produce any reason why this is so.[43]  This Court does not have the power to issue a subpoena on residents of Utah; nor, however, does the Central District of California.  This Court may, however, issue a subpoena on at least the six of the Plaintiff's witnesses that reside in San Antonio per Rule 45(2)(A) of the Federal Rules of Civil Procedure.[44]  Thus, the Court finds that this factor weighs slightly in favor of venue in the Western District of Texas.

*(c) Cost of attendance for willing witnesses*

When the distance between the existing venue and the proposed venue exceeds 100 miles, as it does here, the Fifth Circuit's 100-mile rule, as set out in *Volkwswagen I* and *Volkswagen II*, is applied.[45]  According to the 100 mile-rule, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.[46]

MTS contends that the Central District of California is a much more convenient location for its witnesses that are located in Utah.  Assuming, as MTS does, that the witnesses at Hill Air Force Base in Utah will voluntarily provide their testimony,[47] the Central District of California would be a more convenient venue for those witnesses—the distance between Hill Air Force Base and any courthouse in the Central District of California is around 700 miles, as opposed to the roughly 1,300 miles they would have to travel to reach the San Antonio Division of the Western District of Texas.  Assuming that Defendant also has witnesses in Orange County, the Central District of California

---

[43] Def.'s Reply at 10.

[44] Pl.'s Resp. at 15.

[45] *Volkswagen II*, 545 F.3d at 317.

[46] *Id.*

[47] Def.'s Reply at 10.

would be a more convenient venue for them as well.  These witnesses would have to travel approximately 1,300 miles to reach San Antonio, as opposed attending trial in their home town.

Though the San Antonio Division of the Western District of Texas is clearly less convenient to Defendant's witnesses than the Central District of California, transferring the case to California would merely shift the inconvenience to Plaintiff's witnesses.  "The party moving to transfer must persuade the Court that transfer would signify more than shifting inconvenience from one party to another."[48]  Plaintiff's named witnesses are in San Antonio, Texas; Rockwall, Texas; and Kansas City, Missouri.[49]  To travel to the closest courthouse in the Central District of California (the one located in Santa Ana), the Plaintiff's witnesses in San Antonio would also have to travel about 1,300 miles.  The Plaintiff's witness in Rockwall would have to travel even further—upwards of 1,400 miles—and the Plaintiff's witness in Kansas City, Missouri, would have to travel over 1,600 miles. If the case were to stay in the Western District of Texas, the witness in Rockwall would only have to travel 300 miles and the witness in Kansas City would travel 800 miles to attend trial in San Antonio. Furthermore, the Western District of Texas would clearly be more convenient for Plaintiff's witnesses who reside in San Antonio.

As such, this Court does not find that the Defendant has shown that the Central District of California is the "clearly more convenient" venue for the willing witnesses.

*(d) All other practical problems*

The Court does not find any other private factors relevant to the analysis.

---

[48] *Kleiner v. Sw. Airlines Co.*, No. 5:08-CV-00218-WRF, 2008 WL 4890590 at *2 (W.D. Tex. Nov. 4, 2008) (citing *Van Dusen*, 376 U.S. at 646).

[49] Pl.'s Resp. at 14, 15.

Therefore, this Court finds that Defendant did not clearly demonstrate that the private interest factors support transferring the case to the Central District of California.  Defendant did not assert that ease of access to sources of proof would be better in the Central District of California or that the Central District of California would be better able to compel unwilling witnesses at Hill Air Force Base.  Furthermore, Defendant did not take into consideration the convenience of Plaintiff's witnesses in asserting that the witness convenience factor favored transfer to the Central District of California.  Transferring the case to the Central District of California would merely substitute the inconvenience of Plaintiff's witnesses for the convenience of Defendant's witnesses.

**(3) Public Interest Factors**

In discussing the public interest factors, Defendant asserts that the Central District of California is better equipped to handle this case as it is more familiar with California law, which governs this case because of Paragraph 18 of the T&C, incorporated into the contract between the parties in Paragraph 6 of the bid proposal.[50]  Defendant also asserts that it is more appropriate to burden the citizens of California with jury duty in an issue governed by California law.[51]  As discussed above, the scope of Paragraph 18 does not cover the current dispute.  Plaintiff asserts in opposition that Texas law would apply and performs a choice-of-law analysis demonstrating that Texas law would be applicable to those claims that involve "alleged misrepresentations made in one state and relied upon in another."[52]  Plaintiff seems to contend that the alleged misrepresentations form the basis of each of its claims.  Thus, Plaintiff asserts that Texas law would govern all three of

---

[50] Def.'s Mot. at 9.

[51] *Id.*

[52] Pl.'s Resp. at 18.

its claims.  X Technologies also asserts that the local interest in resolving the dispute and jury burden lay in Texas and that there is no significant disparity in court congestion between the district courts of Texas and California that would support a public interest factor in favor of transfer.[53]

Without additional evidence,[54] the Court is reluctant to declare conclusively that Texas law applies to this case.  Because of this ambiguity, the Court finds that the factors of familiarity of governing law and avoidance of conflict-of-law, as well as the factor of local interest in resolving the dispute and jury burden, are neutral.  If Defendant cannot conclusively prove that California law will apply to this case, then the choice of law factors cannot be said to support its motion to transfer venue. If the matter of choice-of-law is not settled, it cannot be said that it is more appropriate for the jurors of either state to bear the burden of jury duty, so the factor of local interest is neutral.  The Court also agrees with Plaintiff that the factor of court congestion is neutral.  Thus, the Defendant has failed to meet its burden of demonstrating that the public interest factors make the Central District of California the "clearly more convenient" venue.

Accordingly, the Court concludes that transfer of venue is neither convenient for the parties nor in the interest of justice.  MTS has not shown good cause for transferring the case, and as such, the X Technologies's choice of venue must be respected.

---

[53] Pl.'s Resp. at 19–20.

[54] Texas choice-of-law rules require an analysis consistent the Restatement (Second) of Conflicts of Laws.  With regard to contracts that do not stipulate the applicable law, the Restatement (Second) of Conflicts of Laws § 118 applies, which directs to the factors set out in § 6.  Two of those factors concern the place of contracting and the place of negotiation; information which has not been provided by the parties. *See Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 n.6 (Tex. 1996).

**Conclusion**

Defendant's motion to dismiss for improper venue is DENIED.  Defendant's motion to transfer venue to the Central District of California is also DENIED.

It is so ORDERED.

SIGNED this 7th day of June, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

16