IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| X TECHNOLOGIES, INC. | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 5:10-CV-319-XR |
| | § | |
| MARVIN TEST SYSTEMS, INC., | § | |
| | § | |
| DEFENDANT. | § | |

**PLAINTIFF X TECHNOLOGIES, INC.'S APPLICATION FOR AND MEMORANDUM IN SUPPORT OF ATTORNEY'S FEES & COSTS**

NOW COMES Plaintiff X Technologies, Inc. ("**X Technologies**" or "**Plaintiff**") and files this Application for and Memorandum in Support of Attorney's Fees & Costs (the "**Motion**"):

I.
INTRODUCTION

1. Plaintiff prevailed on its claim for breach of contract at trial on the merits in this litigation. The jury found that X Technologies and Geotest formed an Exclusive Teaming Agreement; that Geotest breached that agreement; and that Geotest's breach resulted in damages to X Technologies. X Technologies, having prevailed on its breach of contract claim is entitled to an award of attorney's fees under state law.[1] The jury, seeking to make X Technologies whole, expressed its desire that X Technologies recover its attorney's fees and costs.[2]

---

[1] *See* TEX. CIV. PRAC. & REM. CODE § 38.

[2] Verdict Form [Dkt. #168] at 3.

90550325.1

- 1 -

2. Texas law mandates recovery of reasonable attorney's fees by X Technologies as the party prevailing on a breach of contract claim. To the extent that X Technologies' advanced legal theories in addition to breach of contract, X Technologies is entitled to recover all reasonable fees incurred in pursuing the contract claim, even if they simultaneously advanced non-recoverable claims. X Technologies is also entitled to recover fees for services performed to overcome Geotest's affirmative defenses to breach of contract.

3. To ensure appropriate segregation of fees incurred in connection with attorney services that solely advanced unrecoverable claims, X Technologies has applied a recoverable percent allocation model – an approach approved by the Texas Supreme Court.[3] Plaintiff requests a statutory award of reasonably attorney's fees in the amount of **$714,847.90**.[4] The standards concerning and Plaintiff's methodology relating to the computation of said fees are outlined in this Motion

## II.
## CERTIFICATE OF CONFERENCE

4. As required by Local Rule CV7(i), Plaintiff's counsel has conferred with counsel for Defendant concerning the attorneys fees Plaintiff seeks to recover in connection with this Motion and the associated methods of segregation and computation.

5. Attached hereto as Exhibit A is a true and correct copy of a letter dated September 16, 2011 from Michael W. O'Donnell to Millard A. Johnson. Via telephone on September 19, 2011, counsel for Defendant indicated Defendant's opposition to this Motion in its entirety, referencing the letter attached hereto as Exhibit B. Defendant objects to this application in its entirety based upon Defendant's view that the segregation methodology does not comply with

---

[3] *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313—14 (Tex. 2006).

[4] This amounts to approximately 85% of all chargeable fees incurred by Plaintiff and approximately 89% of all attorney's fees incurred by Plaintiff.

the Texas Supreme Court's *Chapa* opinion and that the fees were not reasonable and necessary. *See* Ex. B (Letter from Millard Johnson to Michael O'Donnell dated September 19, 2011). Defendant has not proposed an alternative methodology or indicated the amount of fees it deems reasonable and necessary.

### III.
### LEGAL STANDARDS

#### A.   *Entitlement to Attorney's Fees*

6.    Fifth Circuit "law is settled that when a federal court sits in diversity, entitlement to attorney's fees is governed by state law."[5] Thus, the discretionary authority granted district courts by Fed. R. Civ. P. 54(d) to award attorney's fees must be exercised within the bounds of applicable state law.  Chapter 38 of the Texas Civil Practice and Remedies Code states that "reasonable attorneys' fees" are recoverable by a prevailing plaintiff in a breach of contract case.[6] The only state law prerequisite to an award of such fees is "presentment" of the claim that Defendant has judicially admitted occurred.[7] An award of reasonable attorney fees to the prevailing party in a contract action is ***mandatory*** under this Section.[8]

---

[5] *Grant v. Chevron Phillips Chem. Co. L.P.*, 309 F.3d 864, n.37 (5th Cir. 2002); *see, e.g. Perkins State Bank v. Connolly*, 632 F.2d 1306, 1310 (5th Cir. 1980); *Shelak v. White Motor Co.*, 636 F.2d 1069, 1072 (5th Cir. 1981); *Reynolds v. Allstate Insurance Co.*, 629 F.2d 1111, 1116 n. 11 (5th Cir. 1980); *United States v. Midwest Construction Co.*, 619 F.2d 349, 352-53 (5th Cir. 1980) (characterizing the issue of awarding attorney's fees as substantive); *Schilling v. Belcher*, 582 F.2d 995, 1003 (5th Cir. 1978).

[6] TEX. CIV. PRAC. & REM. CODE Ann. § 38.001(8); TEX. CIV. PRAC. & REM. CODE Ann. § 38.001—.006 (Vernon 1997 & Supp. 2005).

[7] *See* Defendant's First Amended Original Answer [Dkt. #38] at ¶ 44; Ex. C (Trial Transcript, Vol. 5, 08/26/2011) at 98:14—22.

[8] *See, e.g., Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) (citing Section 38.001 and indicating that "[s]tatutes providing that a party 'may recover,' 'shall be awarded,' or 'is entitled to' attorney fees are not discretionary"); *Cordova v. Sw. Bell Yellow Pages, Inc.*, 148 S.W.3d 441, 446 (Tex. App.—El Paso 2004, no pet.) ("A fee award to the prevailing party is mandatory under the statute if there is proof of the reasonableness of the fees.").

**B.     Fee Segregation**

7.     Under the Texas Supreme Court's opinion in *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313—14 (Tex. 2006), fee segregation is appropriate where the party entitled to recover fees in connection with a breach of contract claim brings other claims which do not provide for recovery of attorney's fees. Texas law permits recovery of fees that advance or are attributable to both a recoverable and unrecoverable claim. Most of X Technologies' attorney services fulfilled such a double duty for the contract and tort claims, including development and presentation of evidence concerning: the solicitation at issue; technical approaches; the relationship and communications between the parties; Geotest's relationship with Raytheon; causation; and damages. Indeed, removal of the tort claims would have had little impact on the development and presentation of evidence at trial.

8.     Although the *Chapa* analysis requires a party entitled to fees under Section 38.001 to segregate fees that are recoverable from fees that are not, the Court recognized that "many, if not most, legal fees cannot and need not be precisely allocated to one claim or the other":

> Many of the services involved in preparing a contract…claim for trial must still be incurred if tort claims are appended to it; adding the latter claims does not render the former services unrecoverable. Requests for standard disclosures, proof of background facts, depositions of the primary actors, discovery motions and hearings, voir dire of the jury, and a host of other services may be necessary whether a claim is filed alone or with others. ***To the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service.***[9]

9.     If discrete legal services advance both a recoverable and unrecoverable claim, they need not be segregated.[10] *Chapa* requires segregation only for "attorney's fees [that] relate

---

[9] *Chapa*, 212 S.W.3d at 313 (emphasis added).
[10] *Id.* at 313—14.

*solely* to a claim for which such fees are unrecoverable."[11] To satisfy the standard, an attorney can testify that, for example, a given percentage of drafting time would have been necessary even if the claim for which fees are not recoverable had never been asserted.[12]

10.  The Texas Supreme Court only requires a ***broad finding*** that the various claims asserted or defended against be dependent upon the same set of facts or circumstances in determining that claims are intertwined for the purposes of fee segregation. For example, the evidence of Geotest's prior dealings and agreements with Raytheon supported a fraud claim that Geotest had no intent to perform the Exclusive Teaming Agreement, but also proved that Geotest breached that agreement by teaming with Raytheon. ***Claims need not be intertwined to the point that the legal elements of each of the claims are the same or substantially similar.***[13] Moreover, concerning affirmative defenses, the *Chapa* court emphasized that prevailing on a contract claim requires a party to overcome "any and all affirmative defenses," and the opposing party who raises them should not be allowed to suggest that overcoming those defenses was unnecessary.[14]

## IV.
## ARGUMENT & AUTHORITIES

### A.  *Plaintiff's Fees Are Properly Segregated*

11.  Plaintiff prevailed on its breach of contract claim and is entitled to recover associated fees. To prevail on its breach of contract claim, Plaintiff also had to overcome numerous affirmative defenses, including: (1) statute of frauds; (2) failure of consideration; (3)

---

[11] *Id.* (emphasis added).

[12] *Id.* (noting that unsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be).

[13] *Air Routing International Corp. (Canada), ARG, v. Britannia Airways, Ltd.*, 150 S.W.3d 682, 69091 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

[14] *Id.* at 314.

failure of acceptance; (4) equitable estoppel; and (5) prior material breach. Prior material breach was a primary focus of Defendant's cross-examinations, case-in-chief, and argument (for which a directed verdict was granted in Plaintiff's favor).[15] Ex. D (O'Donnell Affidavit) at ¶ 5. Accordingly, under Texas law, Plaintiff is entitled to recover all reasonable fees for services performed to advance, in whole or in part, its claim for breach of contract or to overcome Defendant's affirmative defenses.

12. Within this framework, Plaintiff has performed a rigorous segregation analysis. Importantly, ***before applying the segregation model***, Plaintiff took other steps that resulted in a substantial reduction in the amount of fees for which recovery is sought.

    (i)    REMOVAL OF NON-ATTORNEY TIME KEEPERS

13. Plaintiff first removed 100% of fees in connection with services performed by non-attorney personnel. Ex. D (O'Donnell Affidavit) at ¶ 14. This includes all fees billed for paralegal services as well as information technology support and electronic database specialists, all of whom performed necessary and valuable services. Ex. D (O'Donnell Affidavit) at ¶ 14. Plaintiff incurred and paid these fees, totaling **$31,368.75** during the course of the litigation. Ex. D (O'Donnell Affidavit) at ¶ 14. Although Texas law permits a prevailing party to seek recovery of these fees under certain circumstances,[16] Plaintiff's recoverable fees model does not include any amounts for services performed by non-attorney personnel in order to avoid unnecessary dispute. Plaintiff's model also excluded expert fees and trial presentation fees totaling **$47,274.57**. Ex. D (O'Donnell Affidavit) at ¶¶ 15, 16.

---

[15] Ex. E (Trial Transcript, Vol. 7, 08/31/2011) at 12:4—11.

[16] *See Gill Sav. Ass'n v. Int'l Supply Co., Inc.*, 759 S.W.2d 697, 704—05(Tex. App. – Dallas 1988, writ denied) (reasoning that "attorney's fees" includes fees for services performed by paralegals if the services would have otherwise had to have been performed by an attorney).

(ii)    PERCENT ALLOCATION UNDER *CHAPA*

14.     After removing all fees incurred for services performed by non-attorney personnel, Plaintiff then conducted a segregation analysis using a percent allocation model. Ex. D (O'Donnell Affidavit) at ¶ 17. In *Chapa*, the Texas Supreme Court specifically approved a segregation model based applying a percent allocation to different components of the attorney services performed. As endorsed by *Chapa*, Plaintiff has taken various categories of tasks and determined an appropriate percentage to represent the portion of attorney services in each category that are not solely attributable to an unrecoverable claim. Ex. D (O'Donnell Affidavit) at ¶¶ 17, 18.

15.     Indeed, Plaintiff's allocation of percentages goes beyond *Chapa's* requirements. Plaintiff's analysis involved line-by-line review and analysis of each time entry. Ex. D (O'Donnell Affidavit) at ¶ 17. Further, to ensure that its percentages were accurate, Plaintiff's counsel reviewed and analyzed various documents (including deposition transcripts and written discovery) and filings. Ex. D (O'Donnell Affidavit) at ¶ 17. Plaintiff's counsel reviewed all time entries for attorney services in this litigation and identified entries for services that tied solely to an unrecoverable claim.[17] Ex. D (O'Donnell Affidavit) at ¶ 17. However, Plaintiff did not simply remove the fees associated with these time entries from its model. Instead, in every instance, Plaintiff's allocation of recoverable percentages to various categories of tasks results in a greater reduction in fees than would have resulted from removing specific time entries based on the description of services performed. Ex. D (O'Donnell Affidavit) at ¶ 18. Accordingly, Plaintiff's segregation model exceeds *Chapa's* requirements.

---

[17] *In re Vrana*, 335 S.W.3d 322, 330 (Tex. App. – San Antonio 2010, no pet.) ("Daniels testified he analyzed each bill generated by his firm . . . to ensure that the time spent by his attorneys was necessary and reasonable for the work performed.").

16.     Attached as Exhibit D to this Motion is the affidavit of Michael W. O'Donnell, lead counsel for Plaintiff in this matter. Exhibits 2 and 3 to Mr. O'Donnell's affidavit reflect the rigorous segregation analysis conducted by Plaintiff's counsel. The first four columns included on these charts provide a detailed description of the attorney services performed, the name of the attorney who performed those services, the date such services were performed, and the amount of time spent on the services described. The fifth column on these charts indicates the total amount that Plaintiff was charged and paid for the corresponding attorney services. On this line-by-line basis, Plaintiff then applied percentage allocations to each time entry. The sixth column included on these charts contains a task category to identify the discrete legal services being performed. Plaintiff's recoverable percent allocation for the applicable task category is indicated in column seven on these charts. Lastly, the adjusted amount for each time entry, which was calculated by applying the relevant recoverable percentage to the total fees charged, is listed in column eight. Plaintiff seeks recovery of fees equal to the total of the adjustment amount column. Ex. D (O'Donnell Affidavit) at ¶¶ 20—22.

### B.     *Plaintiff's Fees Are Reasonable*

17.     Chapter 38 requires litigants to present evidence regarding the reasonable nature of the fee award. Texas courts consistently refer to the eight factors specified in Texas Disciplinary Rule of Professional Conduct 1.04 in evaluating the reasonableness of attorneys' fees: "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood... that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature

and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered."[18]

18.     A party seeking attorney's fees need not present evidence concerning each of these factors; which factors are most important depends upon the particulars of each case. Evidence that fees are customary and usual creates a presumption of reasonableness.[19] Plaintiff has submitted evidence establishing that its attorney's fees are usual and customary for a matter of this nature, especially considering the complexity of this litigation, the discovery required, and the legal briefing and motion practice in which the parties engaged. *See generally* Ex. D (O'Donnell Affidavit) at ¶ 24. Accordingly, there is ample evidence concerning the reasonableness of Plaintiff's fees.

    (i)    REPUTATION & RESULTS

19.     As indicated above, counsel's reputation bears on the reasonableness of attorney's fees. In this matter, Plaintiff was represented by a well-established international law firm. Plaintiff's counsel is routinely sought out by clients to handle high-stakes, complex litigation matters in various jurisdictions, which often involve amounts in controversy ranging from seven to nine figures. Plaintiff's counsel has extensive experience as lead counsel in such disputes. Ex. D (O'Donnell Affidavit) at ¶ 30.

20.     In this particular litigation, Plaintiff secured a favorable jury finding on the core of its case – Defendant's breach of an Exclusive Teaming Agreement – and obtained dismissal of

---

[18] *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

[19] "It is presumed that the usual and customary attorney's fees for a claim of the type described in Section 38.001 are reasonable." TEX. CIV. PRAC. & REM. CODE Ann. § 38.003.

Defendant's key defense – prior material breach. To prevail on this claim, Plaintiff had to overcome challenges by Defendant on every element of its claim, including the existence of a contract between the parties. Plaintiff successfully carried its burden and proved its contract claim notwithstanding the absence of a signed, written agreement between the parties and the complex nature of the underlying subject matter. Accordingly, Plaintiff obtained a favorable result in this matter.

    (ii)    DISCOUNTED HOURLY RATES

21.    From the onset of this litigation, the parties understood that substantial fees would be incurred if the matter was resolved by a trial on the merits. Mindful of this inescapable reality (particularly given the complexity of the subject matter at issue), Plaintiff's counsel took steps to manage the amount of fees incurred to the extent possible.

22.    In this regard, Plaintiff's counsel applied reduced hourly rates for the two most senior attorneys that represented Plaintiff. Plaintiff's counsel applied a discount of more than 25% to all time billed for attorney services performed in this litigation by Dean Fleming in 2010 and more than 20% to all time billed for attorney services performed in this litigation by Mr. Fleming in 2011. Ex. D (O'Donnell Affidavit) at ¶ 27. Plaintiff's counsel applied a discount of 10% to all time billed for attorney services performed in this litigation by Michael O'Donnell, Plaintiff's lead counsel with primary responsibility for this matter. Ex. D (O'Donnell Affidavit) at ¶ 27. These discounts were applied to 100% of the time that Mr. O'Donnell and Mr. Fleming spent working on this matter, totaling a substantial savings over the life of the litigation.

    (iii)    FEE DRIVERS

<u>Highly Complex Subject Matter</u>

23.    From its inception through its conclusion, this case has been complex, requiring extensive document review, legal research, analysis and brief writing. The underlying subject

matter is exceedingly complex – the equipment and processes involved in multiple approaches to testing laser guided bombs. The complexity and technical nature of the subject matter was reflected by the fact that the trial included testimony from multiple mechanical and electrical engineers explaining concepts such as reverse engineering. To prepare and present their respective cases, counsel for both parties had to gain an understanding concerning the USAF project at issue as well as the various technical approaches companies could rely on to complete the project. Ex. D (O'Donnell Affidavit) at ¶ 4.

24.  In addition to the factual complexity, prosecuting this matter required extensive legal analysis of government-contracting regulations and Department of Defense directives. Ex. D (O'Donnell Affidavit) at ¶ 4. Both parties acknowledged that these regulations, specifically the federal acquisition regulations, were highly relevant to disputed issues in the litigation. Indeed, both parties filed extensive summary judgment briefing and trial briefs concerning the applicability of the federal acquisition regulations. Ex. D (O'Donnell Affidavit) at ¶ 4.

25.  Courts have emphasized the importance of considering complexity in determining reasonableness of fees incurred during litigation. For example, in *In re Vrana*, 335 S.W.3d 322, 330 (Tex. App.—San Antonio 2010, no pet.), the Fourth Court of Appeals of Texas upheld an award of reasonable attorney's fees based, in part, on the fact that the litigation involved was not "a run-of-the-mill" probate dispute, but rather was "akin to a business dispute," involving "a unique issue concerning an environmental regulatory concern." As in *Vrana*, the complex, technical subject matter of this litigation required considerable factual investigation and legal research.

### Lengthy and Contentious Discovery Process

26.  In addition to complexity, Texas courts have emphasized the importance of considering the level of discovery involved, including the length of the discovery period, and the

extent to which fees were incurred in connection with discovery disputes.[20] As in *Tensor*, a substantial portion of Plaintiff's attorney's fees were incurred in connection with a hotly contested and involved discovery process.

27. Although Plaintiff attempted to conduct discovery in this case as efficiently as possible, the discovery required in this matter was extensive and prolonged. The parties conducted substantial written discovery, expert discovery, multiple depositions (including depositions in Ogden, Utah; Tucson, Arizona; and Irvine, California) and non-party discovery. Ex. D (O'Donnell Affidavit) at ¶ 6. In addition to the substantial deposition and written discovery concerning the parties, this litigation involved key non-party discovery relating to Raytheon and its relationship with and information provided to Geotest. Documents obtained from Raytheon were critical to disputed liability issues on Plaintiff's breach of contract claim. Ex. D (O'Donnell Affidavit) at ¶ 6.

28. Moreover, as a result of Defendant's two motions to reopen discovery, to which Plaintiff objected, the discovery period was extended and additional fees were incurred. All told, discovery was conducted over a period of more than a year. Ex. D (O'Donnell Affidavit) at ¶ 6. Although there were a total of 14 depositions taken in this litigation, only four were noticed by Plaintiff. Ex. D (O'Donnell Affidavit) at ¶ 7. The deponent in each of the four depositions was either a Geotest employee who was directly involved in the relevant facts or an expert witness designated by Geotest. Ex. D (O'Donnell Affidavit) at ¶ 7.

29. Both parties designated and presented for deposition a liability expert and a damages expert. Ex. D (O'Donnell Affidavit) at ¶ 8. Concerning damages experts, the parties exchanged reports and rebuttal reports in addition to depositions. Ex. D (O'Donnell Affidavit) at

---

[20] *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 802 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

¶ 8. Fees associated with attorney services relating to the conduct of discovery were substantially increased by the fact that Plaintiff was required to file an extensive motion to compel discovery (and related reply briefing) as a result of Defendant's failure to produce multiple categories of documents. Ex. D (O'Donnell Affidavit at ¶ 9. After conferring without success and then having to brief the motion to compel, Defendant ultimately agreed to produce each category of documents identified in Plaintiff's motion to compel. In addition to Plaintiff's first motion to compel, considerable motion practice was necessary in this case, including additional motions to compel and motions concerning expert designations and testimony. Ex. D (O'Donnell Affidavit) at ¶ 9.

Dispositive Briefing

30. A large portion of the fees in this matter were incurred in connection with responding to dispositive briefing. Ex. D (O'Donnell Affidavit) at ¶ 10. Defendant filed a motion to dismiss for improper venue, or in the alternative, to transfer venue, two motions for summary judgment, and a motion for directed verdict. Ex. D (O'Donnell Affidavit) at ¶ 10. Each round of briefing required Plaintiff's counsel to conduct substantial legal research and analysis. Ex. D (O'Donnell Affidavit) at ¶ 10. In response to Defendant's motions for summary judgment, Plaintiff incurred considerable fees for services to review the case record and compile factual background and disputed evidence and facts, including numerous exhibits to explain the formation and existence of the Exclusive Teaming Agreement and how the agreement was breached by Defendant.[21] Ex. D (O'Donnell Affidavit) at ¶ 10. Plaintiff's research and response briefing included treatment of affirmative defenses asserted by Defendant. Defendant only

---

[21] *Amlin Corp. Member, Ltd. v. Logistics Group Int'l, Inc.*, Civil Action No. H-09-2695, 2011 WL 3271335 (S.D. Tex. July 28, 2011) ("MCPI's summary judgment filings were thorough and careful . . . They reflect significant time spent reviewing the record, investigating legal theories, and responding to the numerous issues [the opposing party] raised . . . MPCI's work was not disproportionate given the challenges and issues [the opposing party] raised and given the nature of the case.").

succeeded in obtaining a partial motion for summary judgment (on breach of fiduciary duty),[22] and a directed verdict on Plaintiff's claim for breach of a non-disclosure agreement. Neither of these rulings mitigate against the work required for Plaintiff's claim for breach of the Exclusive Teaming Agreement, however.

### Trial Preparation

31. In addition to formal discovery, legal research, and briefing, preparing for trial required Plaintiff, among many other things, to investigate the facts, draft pleadings, gather and review their own documents, meet with potential witnesses, identify, select, and confer with expert witnesses, prepare for witness examinations at depositions and at trial, prepare witnesses for examinations, confer with opposing counsel and client representatives, and compile evidence and exhibits. Ex. D (O'Donnell Affidavit) at ¶ 11. The trial itself was vigorously contested by skilled lawyers on both sides, obligating Plaintiff to work late into the night in an attempt to offer a comprehensive and comprehensible presentation of the complex subject matter and issues involved in this litigation.

### Electronic Legal Research

32. Plaintiff also incurred substantial expenses in connection with electronic research services in this matter. Courts have allowed recovery of expenses for electronic legal research an attorneys' fees award, provided that such expenses are actually paid by a firm to a third-party provider and that such expense is customarily charged by the firm to its clients as a separate disbursement.[23]

---

[22] At trial, however, Defendant repeatedly alluded to the existence of a fiduciary relationship between the parties. Ex. F (Trial Transcript, Vol. 6, 08/30/2011) at 71:5—18.

[23] *In re Unitedhealth Group, Inc. Shareholder*, 631 F.3d 913, 917 (8th Cir. 2011); *Invessys, Inc. v. McGraw-Hill Companies, Ltd.*, 369 F.3d 16, 22 (1st Cir. 2004). Federal courts in various circuits have pointed out that "[i]t is common knowledge that large law firms regularly track computer-assisted research costs 'by client' (both Westlaw

33.     Plaintiff seeks recovery of expenses incurred in connection with electronic legal research databases that were charged to and paid by X Technologies. These amounts were based on Plaintiff's counsel's agreements with Westlaw and LexisNexis and were reasonable and customary. Ex. D (O'Donnell Affidavit) at ¶ 23. The research was performed by attorneys and was itemized and charged to X Technologies.[24] This research was necessary for extensive briefing outlined-above, and use of electronic-based research databases reduced the total attorney hours spent in connection with this matter. Ex. D (O'Donnell Affidavit) at ¶ 23.

(iv)    CONDITIONAL AWARD FOR APPEAL

34.     Plaintiff further seeks recovery of an additional **$100,000.00** in conditional fees that may be incurred in post-judgment motions and collection actions, including any appeals.[25] Considering the vigor of the Defendant's defense to this point, Plaintiff reasonably expects that this amount is reasonable and will be necessary in the event that Defendant challenges the verdict in the appellate courts. Ex. D (O'Donnell Affidavit) at ¶¶ 25, 26.

V.
CONCLUSION

WHEREFORE, X Technologies, Inc. respectfully requests that the Court grant, in all respects, Plaintiff X Technologies, Inc.'s Application for and Memorandum in Support of Attorney's Fees and Costs and for all other relief to which it may be entitled.

---

and Lexis make this easy) and then bill clients directly for those costs." *Invessys, Inc.*, 369 F.3d at 22 (citing *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1257—58 (10th Cir. 1998).

[24] By contrast, X Technologies has included no amounts in this application for legal research tools properly viewed as part of Fulbright & Jaworski L.L.P's overhead, such as general library expenses or the Loislaw electronic research tool where charges not itemized by client. *See Invessys, Inc.*, 369 F.3d at 23 ("[C]omputer-aided research is often a variable cost in an individual case – that is, the cost varies (from zero upward) depending on the amount of Westlaw or Lexis service used in the case. By contrast, the firm pays no more or less for its library books ... so it is described as a fixed rather than a variable cost. ... Indeed, if [Westlaw and Lexis research] services were treated as overhead, the hourly rate would likely be higher.").

[25] *See, e.g., In re Arnette*, Bankruptcy No. 09-38643-bjh-7, Adversary No. 10-03062, 2011 WL 3651294, at *5 (N.D. Tex. Bkrtcy. Aug. 18, 2011) (relying on Chapter 38 of the Civil Practice and Remedies Code in awarding $195,000 in conditional attorney's fees in the event of an appeal based on affidavit testimony of reasonableness).

Dated: September 20, 2011

Respectfully submitted,

FULBRIGHT & JAWORSKI L.L.P.

By: */s/ Michael W. O'Donnell*
 Michael W. O'Donnell
 State Bar No. 24002705
 modonnell@fulbright.com
 Dean V. Fleming
 State Bar No. 07122100
 dfleming@fulbright.com
 Blake W. Stribling
 State Bar No. 24070691
 bstribling@fulbright.com
300 Convent Street, Suite 2100
San Antonio, TX 78205-3792
Telephone: (210) 224-5575
Facsimile: (210) 270-7205

Attorneys for Plaintiff X Technologies, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2011, I electronically filed the foregoing with the Clerk of the Court using the ECF system for the Western District of Texas which will send notification of such filing to the following CM/ECF participants:

Millard A. Johnson
JOHNSON DELUCA KENNEDY & KURISKY P.C.
4 Houston Center, Suite 1000
1221 Lamar Street
Houston, Texas 77010

*/s/ Michael W. O'Donnell*
Michael W. O'Donnell